We'll proceed with the oral argument on the first case on the calendar, which is Richardson v. Runnels. May it please the Court, my name is Patience Milrod. I represent the Petitioner, Dwayne McGee Richardson, addressing first the uncertified issue as to which the Court requested briefing from the government. We did receive and review the government's brief, and there's one – and I think actually it ends up highlighting our point, which is that the – if the court, the trial court, had undertaken, as it should have done, a comparative analysis of the district attorney's reasons for disqualifying juror number 52, it would have had to uncover what this Court will notice as it examines the argument of the government, and that is that if age were really the reason for the disqualification, meaning the relative youth of juror number 52, which then gave rise, presumably or the district attorney claimed in his mind, to a suspicion that juror number 52 was either disingenuous or naive, then the older age of the undisqualified juror, number 40, would have made that argument even more strongly as to that juror. In other words, the claim that age was the real reason was pretextual, and it was the obligation of the trial court to now analyze that and to – and having done so would have disclosed the inconsistency. Both jurors were female. Both lived in South Bakersfield. And what the district attorney claimed to find in – unbelievable was that the black juror or the self-identified half-black, half-white – that was how she described herself in the transcript – that that juror, number 52, that it was inconceivable, therefore, she must have either been lying or naive if she claimed that she had no – had had no contact with gang members. And when challenged later, the district attorney said, oh, really, it was because she was so young. But the older juror, the white juror, the white female resident of South Bakersfield, who also claimed to have had no contact with gang members, was actually quite a bit older and would have had, therefore, presumably a lot more opportunity to be in contact with gang members if that were necessarily a feature of being a resident of South Bakersfield. Was any of that pointed out to the trial judge? Excuse me, Your Honor? Was any of that brought to the trial judge's attention specifically by counsel? With respect to the other juror? The other juror, the request for comparative analysis, yes, was made in the trial court by the other juror. The counsel say, listen, there's this person and that person and they're the same. Yes. They did, okay. Yes. Could you tell us the place at which the court said, please look at the trial court, the trial counsel said, please look at Juror X. Yes. I believe it's at page 123 of the excerpts of record. There's a description in the court of appeals. And if the court find it helpful, I will submit the entire courtier transcript. I'm asking you a specific question about what was said to the trial judge, not to the court of appeal. No, I understand that. But in the court of appeals ruling at pages 121 through 124, I believe, is the colloquy. And in the course of that colloquy, defense counsel, I'm looking at page 123 of the excerpts of record, defense counsel pointed out, and this is counsel for my client's co-defendant or my client's attorney at trial did join, counsel for Mr. Taylor pointed out that Ms. Forty described herself as being from South Bakersfield and also indicated she never had any contact with gang members. He saw nothing in comparing the two responses that was different and would justify challenging one and not the other. The request was therefore made of the trial court to do a comparative analysis. The trial court refused. The court of appeal miscited People v. Jones, we would submit, claiming that a comparative analysis is not permitted under State law. In fact, what Jones holds is that a comparative analysis isn't permitted for the first time on appeal. But the appellate court never addressed the question of whether a comparative analysis is required, which, of course, we know it is, both from Miller L., from Louisiana v. Snyder, most recently from the Supreme Court, and from the Green Court, that case that we cited in our 28th, Rule 28 letter. And we know about the juror, is it Forty, beside the fact that she is white and older, she's a resident of South Bakersfield. That's the critical comparative issue, since that would have, according to the DA, supposedly have exposed her to contact with gang members if she were telling the truth about it, and her ---- Now, we know that the younger lady also had a ---- her husband worked at a barbershop in South Bakersfield also, right? Correct. And I think there was some indication that she went there from time to time to that barbershop. Actually, that was speculation on the part of the ---- Okay. I can't remember now who it was. So there was that also, right? That didn't appear to play any role in the analysis of the issue at the trial court. It's ---- we respectfully submit that there are two problems here, and that under 2254, under both D.I. and D.II., this habeas ruling has got to be vacated on the part of Judge O'Neill. This was an unreasonable application of clearly established Federal law, because Federal law required that there be a comparative analysis if an issue arose, and as it did here, that appeared to show that this district attorney's justification was pretextual. And as Louisiana v. Snyder points out, the fact that two similarly situated jurors are evaluated differently and the district attorney excuses one and allows the other to remain on the jury gives rise to an inquiry, and the trial counsel did point this out to the trial court. The trial court didn't care to be ---- to deal with the matter. We also believe the factual finding was unjustified, given the record that was at that time before the trial court, and that, therefore, there's a violation of 2254 D.II. also. I'll pass briefly to the certified issue, and then I want to reserve a minute or two for rebuttal. With respect to the certified issue, which is whether or not Detective ---- whether or not the trial court's admission of Detective Adair's impeachment testimony that G. Bob Smith had identified Mr. Richardson from a photographic line-up in which ---- which occurred after the detective had verbally identified Richardson as a person of interest, had pointed to the photograph, and the photograph had my client's name on it, whether or not it was error on the part of the trial court subsequently to admit that testimony, we think is not a complicated question, and we believe that the court should reverse on it. The trial court's admission of the evidence, the trial court didn't even address the question of the coercive nature of the inquiry of G. Bob by Mr. Adair, and we believe that that was a fatal error. And I would like to reserve, unless the Court has questions. Roberts. Thank you, counsel. Thank you. We'll hear from the State. Good morning, Your Honors. My name is Maggie Krell. I'm from the Attorney General's Office representing the State. I'll start with the uncertified issue as well. The key here is the facts and some of the clear differences between the two jurors that Petitioner's counsel is now asking us to compare. The age difference is key. This is a murder case. This is a complex murder case. This is a complex murder case that involves adult content. This is something that takes place at a motel that's infested with drugs. There's violence. There's references to prostitution. This is not a case where a teenager should be presiding, and that's what Miss Juror No. 52 was in the prosecutor's mind. And that was something that went unchallenged when he said he thought she looked like she was 19 or 20 years old. Defense counsel didn't challenge it. And, in fact, the Court confirmed it when he's – when the Court stated its reasoning for affirming or for denying the Bassan challenge. So we have a juror here who is kicked because of her age. Her age is combined with the perception from the prosecutor that she's naive. And this deal about South Bakersfield and that being this great commonality between these two, first of all, Juror No. 52 says she's from South Bakersfield. Juror No. 40 said she's from the southern part of town. So that may not connote the exact same geographical area. But in any event, it's also an important point that Your Honor brought up that not only does Juror No. 52 claim to be from that area, she also has a husband who has a business in that area, and it's a barbershop. That's a business that's open to the public, where you would have contact with the public and the people in that area. And the fact that – I think counsel confirmed – That wasn't developed at Vore Deer. Particularly, that wasn't. Well, it was developed that – He had a barbershop. He had a barbershop. Not that there were contact with gang members or anybody else there that might be – No, Your Honor. Just the inference that a barbershop is a place where anyone can go and get a haircut. I mean, it's not the type of business that's closed to the public. Furthermore, Juror No. 40's – there was no – Juror No. 40, the older juror, had prior jury experience. She had grown children. Her and her husband had professional jobs. She was in human resources. So all those items would suggest that she wasn't as naive, that she wasn't as  52, who was kicked out of the barbershop. And the problem is, we're really comparing apples and oranges here. Although they do have one commonality, their differences are much greater. And thus, a comparison really wouldn't be helpful. But even doing the comparison, you find that there's valid race-neutral reasons for excusing Juror No. 52. Counsel brought up the point that concerning the prosecutor's concern that the prosecutor could be disingenuous because she's from this gang-infested neighborhood, and yet she claims to have no contact with gangs, whereas Juror No. 40 supposedly is from this area, too, and has the same thing. And she's older, so she has more opportunity. The problem with that argument is oftentimes the youth and younger people are more likely than older people to know about gangs and gang members. Because if you go to high school or you're a young person in an area that's less likely to make contact than you would be if you're an older person and your social circle is people in your age range. Gangsters tend to be younger. Turning to the cases that counsel cites in her briefing, they're really all turning on their facts. And although sometimes a result is reached where the habeas petition is that we don't really have here. In the Kessler case, for example, there's a pattern. There's four out of four minority jurors that are excused. And the prosecutor's reasons even hinge on Miss Rundell is the name of the juror. It even hinges on her working in the Native American community and his concern that Native Americans don't follow the criminal justice law. So that's really a race-based concern right up front. And then you have the Green case where I think Mr. Brooks is the juror there who's kicked. And he's an African-American juror who gets kicked allegedly because he has some kind of hardship. But that hardship is actually cleared by the court. He says he's not concerned about the hardship. Everybody agrees that they're not concerned about the hardship. And then the next day, he gets excused. And this is all within a one-week death penalty trial. So it's not like a long case where a hardship would really come into play. So that reason was considered pretextual by the Supreme Court. How do you excuse the trial court's failure to do any comparative analysis at all? Your Honor, I'm glad you brought that point up. I don't think it's clear that the trial court refused to do analysis at all. In fact, what we have in this record that's also different from the Green case and the Snyder case is that we have the trial we have, first of all, defense counsel actually raising it, saying, how about juror number 40? She's white. She's from South Bakersfield. And she's getting to stay on the jury. And then right after that, after the trial court had an opportunity to hear all the arguments from both sides, the trial court rules and denies the Batson motion. So presumably, the court actually took that into account while he doesn't. The court didn't say that. The trial court didn't say that. The trial court only said, I understand naivete is a legitimate reason for excusing the juror. The trial court, at least in my reading of the record, didn't orally or in writing do any comparative analysis of the jurors, right? The court did not state that he was doing that analysis on the record. However, the So that would be a yes? I'm sorry? That would be a yes? Well, just because he didn't state it on the record doesn't mean it wasn't part of his mental consideration. How are we supposed to know that? Well, trial courts often make rulings without stating all of the reasons for their rulings. And what the trial court found compelling here was that the prosecutor had race-neutral reasons and that those reasons were valid. And the court did say it was a combination of age and naivete. That's true, Your Honor. And I think that's an important point. And I think it's the – it says Batson said in the first case on this issue, the Batson case, it said that the trial court must undertake the analysis. But in the Green case, inciting Batson, I think it's in footnote 2, made the point that the analysis, the analysis doesn't necessarily have to be stated on the record. It just has to be undertaken. And obviously, it's easier to tell when it's on the record whether it's undertaken or not. But here, there's nothing in the record to show that the court refused it. The court didn't say something like, hey, I'm not going to undertake comparative analysis or affirmatively refuse it, as counsel suggested. But your best case indicates that we ought to presume that the district court undertook a comparative analysis that the district court doesn't say so on the record. I'm sorry. The district court? No, the trial court. The trial court. Yeah. Well, Your Honor, because that was an argument that was presented before it, and trial court – and the inference would be that the trial court heard that argument and considered it. Right. I'm just asking for your best case that supports your statement that we have – we should infer that the – in this situation, that the trial court – Montana, we have district courts that are similar to superior courts. I slipped back and forth. The trial court undertook a comparative analysis. Your Honor, I don't – I don't have a case here. You've got about a minute left, why don't you – do you want to turn to the other issue in the case, the certified issue? Yes, Your Honor. The key in that issue is really asking the right question and in how that issue is framed. The court of appeal dealt with that issue properly when it found that it was an issue about a prior and consistent statement, not an identification. It's not about who – whether – who Richardson is. It's about which one of these people had a gun. It's about the events that took place, not the participants in the events, because that wasn't an open question at that point. See, I'm about out of time. Unless the Court has any more questions, people would submit. Very good. Thank you for your argument. Thank you, Your Honors. In light of the argument the Court has heard this morning, I would beg leave of the Court to submit as supplemental excerpts of record the entire colloquy between the district attorney defense counsel and the Court in consideration of this motion. I think that the trial court's relatively unfocused analysis is – it is in the record already, but it – but the argument that led up to it, including Mr. Hamilton, the district attorney's focus on the juror's residence in South Bakersfield and therefore she was naive or therefore she was disingenuous, there really was no discussion of things like juror service or – and even age was only mentioned in assistance of the suggestion that she was naive and that therefore that would render her an inappropriate juror. And if the Court would allow me to do that, I'll make sure that gets filed by Friday. We'll take that under advisement. We may have some other alternate ways of obtaining that information. Okay. Well, I didn't – Now, is it true in this case that the prosecutor did strike a number of people on the jury who were young? Yes, the prosecutor did strike a 19-year-old Bakersfield College student. There was at least one other person. There was a 23-year-old mother of several young children who was excused for hardship. There were other young people who ended up not on the jury, not all of them excused by the district attorney. I do have citations to record pages if the Court would like to have those. Do we know how old juror 40 was? We do not. Okay. The trial court, I believe it was the trial court, or maybe it was the district attorney who speculated that because she had several – actually, we don't know. She had several – She had several grown children, but that may have – She had grown children, I believe. Yes. And that's in the record. And it's available – an inference is available that she was older. And I think it's a reasonable inference from the record. Okay. Thank you for your argument. Thank you. The case has heard will be submitted.
judges: Fernandez, Nelson, Thomas